UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| ANDREW TAYLOR THOMPSON, <br><br> Plaintiff, <br><br> vs. <br><br> PIONEER BANK & TRUST, <br><br> Defendant. | 5:26-CV-05002-RAL <br><br><br> OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS |

In 2024, Plaintiff Andrew Taylor Thompson filed a complaint in Thompson v. Pioneer Bank & Trust, Case No. 5:24-cv-5067-RAL (the 2024 case) alleging an ERISA violation based on a Salary Continuation Agreement (SCA) and two state-law claims. See Doc. 1 in 5:24-cv-5067-RAL. After the 2024 case was dismissed without prejudice in December 2025, on January 12, 2026, Plaintiff Andrew Taylor Thompson filed the Complaint in this case, Doc. 1. The Complaint in the present case alleges similar claims to the ones dismissed without prejudice in the 2024 case but changes the basis of the ERISA claim. Compare Doc. 1 with Doc. 1 in 5:24-cv-05067-RAL. Defendant Pioneer Bank & Trust (Pioneer) has filed a Motion to Dismiss, Doc. 6. This Court held a hearing on the pending motion to dismiss as well as pending motions in the related case, Thompson v. Pioneer Bank & Trust, No. 5:24-cv-05067-RAL, on April 3, 2026. For the reasons explained below, Pioneer's motion to dismiss is denied.

1

## I.    Background Facts

In 2006, Thompson and Pioneer entered into the Pioneer Bank & Trust Registered Representative Employment Agreement (Employment Agreement) under which Pioneer employed Thompson as a financial advisor. Doc. 1 at 2; Doc. 1-1. While working for Pioneer, Thompson was a participant in the Pioneer Bank & Trust Employees Profit Sharing Retirement Plan (the Plan) dated January 1, 2019, and as potentially amended thereafter. Doc. 1 at 2; Doc. 1-2. Thompson worked for Pioneer until August 2024 when Thompson alleges that he was compelled to resign. Doc. 1 at 2–3. Thompson informed Pioneer of his resignation by providing Pioneer with a Notice of Resignation of Employment and Termination of Employment Agreement (Notice of Resignation). Id.; Doc. 1-3.

In this 2026 case, Thompson makes three claims against Pioneer: (1) an Employee's Retirement Income Security Act (ERISA) claim alleging that the Plan was an ERISA-governed employee benefits plan that Pioneer had breached and that Pioneer had interfered with Thompson's ERISA-governed rights in violation of Section 510 of ERISA under the Plan (or other plans or documents); (2) a declaratory judgment claim seeking various declarations relating to the Employment Agreement and Thompson's resignation; and (3) a claim of breach of the Employment Agreement. Doc. 1. Thompson attached three documents to his Complaint: the Employment Agreement, the Plan, and the Notice of Resignation. Docs. 1-1, 1-2, 1-3. Thompson alleges this Court has jurisdiction under 28 U.S.C. § 1331 over Count 1 and supplemental jurisdiction under 28 U.S.C. § 1367 over Counts 2 and 3. Doc. 1 at 2. There is no diversity-of-citizenship jurisdiction here. See id. at 1.

This new lawsuit is primarily the same as the one filed in 2024, but this time, the ERISA count relies primarily, but not exclusively, on the Plan instead of the unexecuted draft Salary

2

Continuance Agreement (SCA). Compare Doc. 1 with Doc. 1 in 5:24-cv-05067-RAL. The other two counts do not materially differ from the state law counts in the 2024 case complaint apart from an addition referring to a 2025 Eighth Circuit decision in paragraph 41(e). The exhibits attached are the same except that the Plan has replaced the SCA.

This Court previously dismissed the 2024 case after concluding, "[b]ecause the SCA was never executed, it is not an ERISA-governed plan binding on the parties, and Thompson cannot bring an ERISA claim under 29 U.S.C. § 1132(a) based on the draft SCA." Doc. 58 at 12 in 5:24-cv-05067-RAL. Because the only federal claim had failed, this Court then declined to exercise supplemental jurisdiction over Thompson's remaining two state-law claims. Id. at 13. By the time of Thompson's response to Pioneer's Motion for Summary Judgment in the 2024 case, Thompson had realized the problems with the theory of the draft SCA being a source of ERISA rights and initiated an argument that the Plan instead was the source of ERISA rights. Despite Thompson's creativity in arguing that his complaint was vague enough to embrace the new theory, this Court refused to let Thompson effectively amend his ERISA claim in a response brief when Pioneer had not been on notice of any ERISA claim other than one in the complaint based on the SCA. This Court dismissed the ERISA count and the case generally without prejudice.

On April 3, 2026, this Court held a hearing on the motion to dismiss in this case and on other motions Thompson filed in the 2024 case.

## II.    Legal Standard

A challenge to subject matter jurisdiction under Rule 12(b)(1) can be either facial or factual in nature. Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990). Regardless of whether the jurisdictional attack is facial or factual, the plaintiff has the burden of proving subject matter jurisdiction. V S Ltd. P'ship v. Dep't of Hous. & Urb. Dev., 235 F.3d 1109, 1112 (8th Cir. 2000).

3

Under a facial attack, the "court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." Jones v. United States, 727 F.3d 844, 846 (8th Cir. 2013) (quoting Osborn, 918 F.2d at 729 n.6). As such, courts must accept a plaintiff's factual allegations as true and make all inferences in the plaintiff's favor but need not accept a plaintiff's legal conclusions. Retro Television Network, Inc. v. Luken Communs., LLC, 696 F.3d 766, 768–69 (8th Cir. 2012).

In contrast, where a factual attack is made on the court's subject matter jurisdiction, because "its very power to hear the case" is at issue, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case," without transforming the motion into one for summary judgment. Osborn, 918 F.2d at 730 (quoting Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)); see also Gould, Inc. v. Pechiney Ugine Kuhlmann, 853 F.2d 445, 451 (6th Cir. 1988) ("When a challenge is to the actual subject matter jurisdiction of the court, as opposed to the sufficiency of the allegation of subject matter jurisdiction in the complaint which may be cured by an amendment to the pleading, the district court has the power to resolve any factual dispute regarding the existence of subject matter jurisdiction."). In a factual attack on a court's jurisdiction, "the court considers matters outside the pleadings, and the non-moving party does not have the benefit of [Rule] 12(b)(6) safeguards." Osborn, 918 F.2d at 729 n.6 (internal citation omitted). In deciding a factual challenge to subject matter jurisdiction, the court need not view the evidence in the light most favorable to the non-moving party. See Osborn, 918 F.2d at 729 n.6, 730.

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Courts must accept the plaintiff's factual allegations as true and make

4

inferences in the plaintiff's favor but need not accept the plaintiff's legal conclusions. Retro Television Network, Inc., 696 F.3d at 768–69. Although detailed factual allegations are unnecessary, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face[,]" meaning "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Therefore, the "factual allegations must be sufficient to raise a right to relief above the speculative level." Cook v. George's, Inc., 952 F.3d 935, 938 (8th Cir. 2020) (cleaned up and citation omitted). Claim or issue preclusion may also justify granting a motion to dismiss. See Laase v. Cnty. of Isanti, 638 F.3d 853, 856 (8th Cir. 2011).

When ruling on a Rule 12(b)(6) motion, a court generally must ignore materials outside the pleadings, but it may "consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, items appearing in the record of the case, and exhibits attached to the complaint." Dittmer Props., L.P. v. FDIC, 708 F.3d 1011, 1021 (8th Cir. 2013) (cleaned up and citation omitted); see also Kushner v. Beverly Enters., Inc., 317 F.3d 820, 831 (8th Cir. 2003) (explaining that courts may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading" (citation omitted)). Here, the parties acknowledge that Thompson's complaint in the 2024 case against the same defendant, Pioneer, filed in the District of South Dakota, the previous decision in that 2024 case from this Court, and the two contracts, the SCA and the Plan, between Thompson and Pioneer are documents either appurtenant to or attached to Thompson's Complaint in the 2026 case which this Court can consider in ruling on the motion to dismiss. The consideration of such items does not convert a motion to dismiss into one for

summary judgment. <u>Waldner v. N. Am. Truck & Trailer, Inc.</u>, 277 F.R.D. 401, 406 (D.S.D. 2011) (citing <u>State ex rel. Nixon v. Coeur D'Alene Tribe</u>, 164 F.3d 1102, 1107 (8th Cir. 1999)).

Pioneer argues that the ERISA claim in the Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(1) because the doctrine of res judicata bars Thompson's Complaint, and in the alternative, this Court lacks subject matter jurisdiction because Thompson waived his argument that the Plan creates jurisdiction, Thompson failed to exhaust his administrative remedies under the Plan, and Thompson has no viable claim pursuant to ERISA Section 510. Docs. 6, 7. Without the ERISA claim, Pioneer reasons, this Court would lack supplemental jurisdiction over the remaining two state-law claims. Doc. 7. In its reply brief, Pioneer also argues that Thompson lacks standing to bring his ERISA claim. Doc. 16 at 11–12. Thompson opposes the motion. Doc. 14.

### III.   Discussion

#### A. Res Judicata

Pioneer first asserts that because Thompson already brought these three exact three claims in his 2024 case, the claims alleged in the Complaint are barred by res judicata. Doc. 7 at 7–8. The doctrine of res judicata includes both claim preclusion and issue preclusion. <u>Taylor v. Sturgell</u>, 553 U.S. 880, 892 (2008); <u>see also</u> <u>Am. Fam. Ins. Grp. v. Robnik</u>, 787 N.W.2d 768, 774 (S.D. 2010). Claim preclusion "forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit[,]'" while "[i]ssue preclusion, in contrast, bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." <u>Taylor</u>, 553 U.S. at 892 (quoting <u>New Hampshire v. Maine</u>, 532 U.S. 742, 748–49 (2001)). "By precluding parties from contesting matters that they have had a full and fair

opportunity to litigate, these two doctrines protect against the expense and vexation attending multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibility of inconsistent decisions." Id. (cleaned up) (quoting Montana v. United States, 440 U.S. 147, 153–54 (1979)).  Pioneer argues that claim preclusion applies to the facts of this case. Doc. 7 at 6.

Although Pioneer appears to have moved to dismiss under Rule 12(b)(1),[1] "Rule 12(b)(6) or Rule 56 motions are the more appropriate vehicles for a dismissal based on preclusion," Seldin v. Seldin, 879 F.3d 269, 272 (8th Cir. 2018) (finding the district court erred when it found that res judicata was in part a sufficient ground to grant a Rule 12(b)(1) motion).  See also id. ("The Supreme Court has stated that '[p]reclusion, of course, is not a jurisdictional matter.'" (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 293 (2005); citing In re Athens/Alpha Gas Corp., 715 F.3d 230, 235 (8th Cir. 2013) (stating that res judicata is a "non-jurisdictional question"))).  Therefore, this Court will analyze Pioneer's preclusion argument under Rule 12(b)(6).  "Dismissal on the basis of res judicata at the pleading stage is appropriate if the defense is apparent on the face of the complaint." Magee v. Hamline Univ., 775 F.3d 1057, 1058–59 (8th Cir. 2015) (citing C.H. Robinson Worldwide, Inc. v. Lobrano, 695 F.3d 758, 763–64 (8th Cir. 2012)).  The "face of the complaint" includes "public records and materials embraced by the complaint" as well as "materials attached to the complaint." C.H. Robinson, 695 F.3d at 764 (cleaned up and citation omitted).

---

[1] Pioneer's Motion to Dismiss states that it "moves to dismiss Plaintiff Andrew Taylor Thompson's Complaint (Doc. 1) in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(1)," see Doc. 6, but Pioneer later relies on language referencing Rule 12(b)(6), see Doc. 7 at 5–6 (citing Jewell v. Sunshine Towing, LLC, No. 5:24-CV-05011, 2025 WL 1043101, at *6 (D.S.D. Apr. 8, 2025)).

"In determining whether res judicata applies, the law of the forum that rendered the first judgment controls the res judicata analysis." Schwartz v. Bogen, 913 F.3d 777, 781 (8th Cir. 2019) (cleaned up and citation omitted). Although Pioneer presents its res judicata argument under the elements considered by South Dakota law, because this Court did not sit in diversity jurisdiction in the 2024 case, but rather federal question jurisdiction, here, federal law applies. See Poe v. John Deere Co., 695 F.2d 1103, 1105 (8th Cir. 1982) (concluding federal law governed the issue of res judicata because the court was tasked with determining the effect of a judgment rendered by a federal court on a claim arising under federal law).

In the Eighth Circuit, res judicata applies if the following elements are satisfied:

(1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involve the same parties (or those in privity with them); and (4) both suits are based upon the same claims or causes of action. Furthermore, the party against whom res judicata is asserted must (5) have had a full and fair opportunity to litigate the matter in the proceeding that is to be given preclusive effect.

Behrens v. JPMorgan Chase Bank, N.A., 792 F. Supp. 3d 902, 909–10 (N.D. Iowa 2025) (quoting Rutherford v. Kessel, 560 F.3d 874, 877 (8th Cir. 2009)).

This first element is not satisfied. In evaluating whether the first suit resulted in a final judgment on the merits, this Court refers to its Order on Thompson's Motion to Amend/Alter the Judgment in the 2024 case: in that case, this Court dismissed Thompson's ERISA claim without prejudice. This Court had determined that Thompson could not assert an ERISA claim based on the Plan for the first time in his response to Pioneer's summary judgment motion when the ERISA claim in the complaint was narrowly tied to a single document—the unexecuted SCA. See Doc. 84 in 5:24-cv-5067-RAL. Although this Court's analysis would be different if Thompson had attempted to relitigate the ERISA claim based on the same draft SCA here, as that would be the same claim on the same jurisdictional basis, this Court's dismissal in the 2024 case was without

prejudice as to any ERISA claim based on a different document. Similarly, this Court dismissed the 2024 case's state-law claims without prejudice after declining to exercise supplemental jurisdiction. See Doc. 58 in 5:24-cv-5067-RAL; 18A Wright & Miller's Federal Practice and Procedure § 4436 (3d ed. 2026) ("Discretionary refusal to exercise supplemental jurisdiction likewise does not preclude a subsequent action on state-law claims in a state court or in a federal court that has an independent basis of subject-matter jurisdiction."). The dismissal without prejudice is not a final judgment on the merits of any of the three claims, including the ERISA claim pleaded in the Complaint based on the Plan, for the purposes of res judicata. See Al-Saadoon v. Barr, 973 F.3d 794, 801 (8th Cir. 2020) ("Ordinarily, a judgment dismissed without prejudice does not create a res judicata bar." (citing Rosemann v. Roto-Die, Inc., 276 F.3d 393, 398 (8th Cir. 2002))).

Although this Court need not concern itself with the remaining elements necessary to apply res judicata, the fifth element for res judicata is unmet given how this Court disposed of the 2024 case. In its decision dismissing the 2024 case based on the draft SCA, this Court read the 2024 complaint as being based on the SCA but foresaw that Thompson might plead another ERISA claim based on the Plan whether in the pending state court case or a new federal case. Thompson after all raised such a claim after the deadline to amend and in a response brief in the 2024 case. This Court dismissed the ERISA claim as well as the state-law claims without prejudice effectively preserving those claims. Docs. 58, 84 in 5:24-cv-5067-RAL. This Court's ruling effectively deprived Thompson of a full and fair opportunity to litigate his ERISA claim based on the Plan in the 2024 case. Although Thompson is not a typical ERISA litigant given his work as a financial advisor and according to Pioneer, involvement in creating the Plan, the Eighth Circuit has emphasized "the remedial scheme" of ERISA. Braden v. Wal-Mart Stores, Inc., 588 F.3d 585,

9

598 (8th Cir. 2009). This Court did not address the merits of Thompson's ERISA claim based on the Plan when dismissing the ERISA claim without prejudice to reserve that claim for future litigation. Docs. 58, 84 in 5:24-cv-5067-RAL. Therefore, this Court determines that Thompson did not have an opportunity to be heard on this particular ERISA claim based on the Plan.

Because the elements of res judicata have not all been satisfied, res judicata does not apply. See Behrens, 792 F. Supp. 3d at 909–10 (quoting Rutherford, 560 F.3d at 877). In addition, "[e]ven assuming res judicata applies, the doctrine does not bar a subsequent action where, in an earlier action, a court has made an express reservation of right as to future litigation," as this Court did in dismissing without prejudice all claims including the ERISA claim in the 2024 case. Mountain Pure, LLC v. Turner Holdings, LLC, 439 F.3d 920, 925 (8th Cir. 2006) (citation omitted).

## B. Subject Matter Jurisdiction

### 1. Jurisdiction over ERISA claims

Pioneer argues that even if res judicata does not apply, this Court lacks subject matter jurisdiction. Doc. 7 at 10. "[F]ederal courts are courts of limited jurisdiction." United States v. Afremov, 611 F.3d 970, 975 (8th Cir. 2010). This Court "has a special obligation to consider whether it has subject matter jurisdiction in every case." Hart v. United States, 630 F.3d 1085, 1089 (8th Cir. 2011). When a court lacks jurisdiction, the case must be dismissed. See Robins v. Ritchie, 631 F.3d 919, 924 (8th Cir. 2011). Generally, federal courts have jurisdiction over an action under 28 U.S.C. §§ 1331 (federal question), 1332 (diversity), or 1367 (supplemental). The Complaint here invokes federal question jurisdiction and supplemental jurisdiction. See Doc. 1 at 2.

Under § 1331, federal district courts have jurisdiction over cases arising out of federal law, including federal statutes and the United States Constitution. Merely identifying a federal issue is

10

not enough to confer federal jurisdiction; the right being enforced must arise from federal law. Cagle v. NHC Healthcare-Maryland Heights, LLC, 78 F.4th 1061, 1066 (8th Cir. 2023). "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987). However, dismissal for lack of subject matter jurisdiction may still be proper "when the claim is so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) (cleaned up and citation omitted). The plaintiff has the burden "to establish subject-matter jurisdiction by a preponderance of the evidence." Richardson v. BNSF Ry. Co., 2 F.4th 1063, 1067 (8th Cir. 2021).

In Count 1 of the Complaint, Thompson makes various claims under ERISA. Doc. 1 at 5–6. ERISA is a federal law that "comprehensively regulates certain employee welfare benefits and pension plans." Bannister v. Sorenson, 103 F.3d 632, 635 (8th Cir. 1996). ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). "ERISA, therefore, preempts state common law causes of action that reference or pertain to an ERISA plan." Eide v. Grey Fox Tech. Servs. Corp., 329 F.3d 600, 604 (8th Cir. 2003). In addition to preempting state causes of action, ERISA creates a federal cause of action, authorizing "a participant or beneficiary [to] sue in federal court to recover benefits due under an employee benefit plan." Dakota, Minn. & E. R.R. Corp. v. Schieffer, 648 F.3d 935, 936–37 (8th Cir. 2011) (citing 29 U.S.C. § 1132(a)(1)(B)). ERISA also authorizes "a participant, beneficiary, or fiduciary . . . to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3).

11

In Count 1, Thompson seeks to "recover benefits due to him under the Plan, to enforce his rights under the terms of the Plan, and to clarify his rights to future benefits under the Plan (or other ERISA-regulated plans or documents yet to be discovered)" using the federal cause of action established by § 1132(a)(1)(B). Doc. 1 at 5. Thompson also alleges that Pioneer interfered with his rights under the Plan in violation of 29 U.S.C. § 1140. Id. Thus, a federal question is presented on the face of Thompson's Complaint, and this Court has federal question jurisdiction.[2]

Pioneer argues otherwise. However, in raising issues around waiver, exhaustion, and the viability of the ERISA claim, Pioneer has not called into question this Court's subject matter jurisdiction. Rather, each of Pioneer's arguments are appropriately considered under Rule 12(b)(6) rather than Rule 12(b)(1). See Fed. R. Civ. P. 8(c)(1) (listing waiver as an affirmative defense), 12(b)(6); C.H. Robinson, 695 F.3d at 764 (holding that "[i]f an affirmative defense . . . is apparent

---

[2] Before 2020, district courts within the Eighth Circuit treated the existence or non-existence of an ERISA plan as a jurisdictional question and required plaintiffs to prove by a preponderance of the evidence the existence of an ERISA plan before exercising jurisdiction over ERISA-based claims. See Dakota, Minn. & E. R.R. Corp. v. Schieffer, 744 F. Supp. 2d 987, 991–92 (D.S.D. 2010); In re Express Scripts, Inc., PBM Litig., No. 4:05-MD-01672, 2007 WL 4333380, at *8 (E.D. Mo. Dec. 7, 2007); EFCO Corp. v. Iowa Ass'n of Bus. and Indus., 447 F. Supp. 2d 985, 998 (S.D. Iowa 2006). District courts relied on binding Eighth Circuit precedent, namely Kulinski v. Medtronic Bio-Medicus, Inc., which held "[w]here federal subject matter jurisdiction is based on ERISA, but the evidence fails to establish the existence of an ERISA plan, the claim must be dismissed for lack of subject matter jurisdiction." 21 F.3d 254, 256 (8th Cir. 1994). Accordingly, district courts on motions to dismiss closely scrutinized the plans at issue in each case to determine whether they qualified as ERISA-plans. When courts found that the challenged plans were not ERISA plans, the underlying actions were dismissed for lack of jurisdiction. See Dakota, Minn. & E. R.R. Corp., 744 F. Supp. 2d at 997. However, in 2020, the Eighth Circuit revisited the issue of whether the existence of an ERISA plan was jurisdictional in light of Arbaugh v. Y&H Corp., 546 U.S. 500 (2006). See Sanzone v. Mercy Health, 954 F.3d 1031 (8th Cir. 2020). In Sanzone, the Eighth Circuit applied Arbaugh's guidance to ERISA claims and concluded "whether a plan is an ERISA plan is an element of the plaintiff's case and not a jurisdictional inquiry." 954 F.3d at 1040.

on the face of the complaint . . . that [defense] can provide the basis for dismissal under Rule 12(b)(6)"). Therefore, this Court will analyze Pioneer's arguments under Rule 12(b)(6).

### 2. Waiver

Pioneer argues that because Thompson helped create the Plan and knew it existed for five years before he filed his complaint in the 2024 case, Thompson has now waived any ERISA claim based on the Plan. See Doc. 7 at 11–12. As noted above, when ruling on a Rule 12(b)(6) motion, a court generally must ignore materials outside the pleadings, but it may "consider 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, items appearing in the record of the case, and exhibits attached to the complaint.'" Dittmer Props., 708 F.3d at 1021. Waiver challenges the validity of the ERISA claim "rather than the court's jurisdiction over the subject matter." Aubrey v. Zamam, LLC, No. 4:17CV00446, 2017 WL 5180427 (E.D. Ark. Nov. 8, 2017) (citing Arbaugh, 546 U.S. at 511). Therefore, waiver is not a basis for dismissal under Rule 12(b)(1). Id.

Neither is the affirmative defense of waiver "apparent on the face of the complaint." C.H. Robinson, 695 F.3d at 764. Waiver "is the intentional relinquishment or abandonment of a known right." Morgan v. Sundance, Inc., 596 U.S. 411, 417 (2022) (quoting United States v. Olano, 507 U.S. 725, 733 (1993)). The parties dispute the underlying facts surrounding Thompson's knowledge and prior possession of the Plan. Compare Doc. 7 at 11–12 with Doc. 14 at 15–16. See also Ruiz–Sanchez v. Goodyear Tire & Rubber Co., 717 F.3d 249, 252 (1st Cir. 2013) ("Dismissal 'on the basis of an affirmative defense requires that (i) the facts establishing the defense are definitively ascertainable from the complaint and the other allowable sources of information, and (ii) those facts suffice to establish the affirmative defense with certitude.'"

13

(quoting <u>Nisselson v. Lernout</u>, 469 F.3d 143, 150 (1st Cir. 2006))).  Pioneer's argument is not a basis for dismissal under Rule 12(b)(6).

### 3. Exhaustion

Pioneer next argues there is no subject matter jurisdiction because Thompson failed to exhaust his administrative remedies under the Plan as required by law, and therefore, Thompson's ERISA claim should be dismissed.  <u>See</u> Doc. 7 at 12–15.  In response, Thompson cites to <u>Burds v. Union Pacific Corp.</u>, where the Eighth Circuit did "not reach the question of whether exhaustion of administrative remedies is required in every case where the plaintiff is asserting a § 510 violation."  Doc. 14 at 18 (citing 223 F.3d 814, 818 (8th Cir. 2000)).[3]

For ERISA claims brought under § 502, the Eighth Circuit has repeatedly recognized the "judicially created exhaustion requirement."  <u>See</u> <u>Brown v. J.B. Hunt Transp. Servs., Inc.</u>, 586 F.3d 1079, 1084, 1087 (8th Cir. 2009) (reversing summary judgment decision on failure to exhaust and remanding to district court with instructions to remand to insurer for an out-of-time appeal after concluding insurer had violated § 1132 by denying plaintiff a reasonable opportunity for full and fair review and therefore plaintiff was not required to exhaust her administrative remedies under the facts of this case); <u>see also</u> <u>Van Natta v. Sara Lee Corp.</u>, 439 F. Supp. 2d 911, 938–39 (N.D. Iowa 2006) (collecting Eighth Circuit cases).  "ERISA authorizes a plan participant to bring a civil action 'to recover benefits due to him under the terms of his plan.'"  <u>Yates v. Symetra Life Ins. Co.</u>, 60 F.4th 1109, 1112 (8th Cir. 2023) (quoting 29 U.S.C. § 1132(a)(1)(B)).  "Before bringing such an action, however, a participant generally must exhaust the administrative remedies required under his particular ERISA plan."  <u>Id.</u> (cleaned up and citation omitted).  Therefore,

---

[3] <u>Burds</u> nonetheless held "that in the facts and circumstances of this case, the district court committed no error in dismissing the nurses' § 510 claims without prejudice and requiring them to exhaust their administrative remedies before seeking court relief."  223 F.3d at 818.

"[w]here a claimant fails to pursue and exhaust administrative remedies that are clearly required under a particular ERISA plan, [her] claim for relief is barred." Brown, 586 F.3d at 1084 (second alteration in original) (citation omitted).

This exhaustion requirement is "not absolute." Id. at 1085. "Under section 1133, a plan must set forth in writing its 'specific reasons' for a denial of benefits and must afford participants the opportunity for a full and fair review by the appropriate fiduciary of a claim denial decision." Orrison v. Mayo Clinic, No. 24-CV-01124, 2025 WL 2688798, at *6 (D. Minn. Sept. 19, 2025) (quoting 29 U.S.C. § 1133) (finding that allegations detailing numerous efforts to receive material information were sufficient to survive a motion to dismiss). If the ERISA-governed plan does not "provide participants with notice and review, aggrieved participants are not required to exhaust their administrative remedies before filing a lawsuit for benefits under § 1132(a) . . . . Nor are plan participants required to exhaust if doing so would prove futile." Brown, 586 F.3d at 1085; see also Yates, 60 F.4th at 1113. The substance of the plaintiff's exhaustion argument matters more than its label: in Brown, "[a]lthough couched in terms of 'futility,' the gravamen of [the plaintiff's] argument in the district court and this court is simply this: [the insurer's] failure to comply with its duty under § 1133 to afford [the plaintiff] 'a reasonable opportunity . . . for a full and fair review' excuses her failure to exhaust." Id. at 1085–86 (concluding without administrative record and other requested documents, plaintiff was unable to fully and fairly prepare her appeal).

However, "[t]he futility exception is narrow—the plan participant 'must show that it is certain that [her] claim will be denied on appeal, not merely that [she] doubts that an appeal will result in a different decision.'" Brown, 586 F.3d at 1085 (second and third alteration in original) (quoting Zhou v. Guardian Life Ins. Co. of Am., 295 F.3d 677, 680 (7th Cir. 2002)). For example, another district court in the Eighth Circuit has granted a motion to dismiss on this issue where

despite plaintiff's allegations on futility "point[ing] to [insurer's] past and present course of conduct, including [insurer's] delayed responses to discovery requests, to support his contention" because "[t]he Plaintiff fail[ed] to show that it would have been futile for him to exhaust the administrative remedies available under the ERISA plan." Ternes v. Noridian Mut. Ins. Co., No. 1:13-CV-057, 2014 WL 12836440, at *3 (D.N.D. Jan. 23, 2014). See also Sievers v. United of Omaha Life Ins. Co., No. 18-CV-3048, 2018 WL 5019388, at *3–4 (N.D. Iowa Oct. 16, 2018) (dismissing complaint where plaintiff "cannot show that it is certain her claim would have been denied on appeal" (cleaned up and citation omitted)).

As the parties note, there is a circuit split as to whether exhaustion is required specifically for § 510 claims such as the one Thompson raises. Doc. 14 at 18 (citing Doc. 57 at 2–3 in 5:24-cv-5067-RAL (citing Berger v. Edgewater Steel Co., 911 F.2d 911, 916 n.4 (3d Cir. 1990) ("The Employees are not required to exhaust their administrative remedies before seeking judicial relief on their claim that Edgewater's amendment of the Plan violates § 510 of ERISA"); Smith v. Sydnor, 184 F.3d 356, 364 (4th Cir. 1999) ("The very nature of a claim for a violation of an ERISA statutory provision further supports the conclusion that it is not subject to the exhaustion requirement"); Chailland v. Brown & Root, Inc., 45 F.3d 947, 951 (5th Cir. 1995) ("Accordingly, we hold that the district court properly denied Brown & Root's motion to dismiss pursuant to our exhaustion of remedies doctrine"); Richards v. Gen. Motors Corp., 991 F.2d 1227, 1235 (6th Cir. 1993) (holding ERISA § 510 claims are not subject to exhaustion); Amaro v. Cont'l Can Co., 724 F.2d 747, 752 (9th Cir. 1984) (holding exhaustion not required), overruled on other grounds by Dorman v. Charles Schwab Corp., 934 F.3d 1107 (9th Cir. 2019); Held v. Mfrs. Hanover Leasing Corp., 912 F.2d 1197, 1205 (10th Cir. 1990) (agreeing "a plaintiff need not exhaust administrative

remedies prior to bringing an action under § 510 of ERISA"))); see Mason v. Cont'l Grp., Inc., 763 F.2d 1219, 1227 (11th Cir. 1985) (requiring exhaustion of § 510 claims).

The Eighth Circuit did not adopt one view or the other in Burds but rather determined that a district court has discretion to require plaintiffs to exhaust their administrative remedies prior to bringing a § 510 claim. See Burds, 223 F.3d at 817–18. In the aftermath of Burds, district courts in the Eighth Circuit have found that no exhaustion is required when the resolution of a § 510 claim that does not turn on the interpretation of a plan. Nelson v. Wachovia Sec., LLC, No. CIV. 07-3162, 2008 WL 781932, at *4 (D. Minn. Mar. 20, 2008); Patnaude v. Qwest Corp., No. CIV. 01-1847, 2003 WL 22076564, at *6 (D. Minn. Sept. 2, 2003); Gunderson v. St. Louis Connectcare, No. 4:08CV01553, 2009 WL 882240, at *4 (E.D. Mo. Mar. 26, 2009). For a § 510 claim, one court found that "exhaustion is not required," because "as pleaded, this case focuses only on whether [defendant] terminated [plaintiff] with the specific intent to interfere with his receipt of ERISA benefits" and "[s]uch an issue involves no interpretation of the plan itself." Nelson, 2008 WL 781932, at *4.

Thompson has pleaded his ERISA claim under both §§ 502 and 510, see Doc. 1 ¶¶ 30, 32, and he alleges in his Complaint that exhaustion was not required as exhaustion is "unnecessary, inapplicable, and futile," and that he "did exhaust his remedies by repeatedly asking Pioneer to remedy the intolerable working conditions described above, which was the only practical means of exhaustion and which efforts were rejected by Pioneer," id. ¶ 33. Based on these allegations, the ERISA claim survives a motion to dismiss for failure to exhaust administrative remedies at this stage of the proceedings. See Nelson, 2008 WL 781932, at *4; Patnaude, 2003 WL 22076564, at *6; Gunderson, 2009 WL 882240, at *4; Duncan v. Jack Henry & Assocs., Inc., 617 F. Supp. 3d 1011, 1037 (W.D. Mo. 2022) (declining to find complaint failed to state a claim to the extent

17

plaintiff is required to exhaust her ERISA claim for benefits where plaintiff "allege[d] she exhausted her administrative remedies by pursuing both a First Level of Appeal and Second Level of Appeal"); Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc., 99 F. Supp. 3d 1110, 1180 (C.D. Cal. 2015) ("Even if the [complaint] does not allege that all claims were actually appealed and exhausted, if futility is sufficiently alleged, exhaustion may not be necessary."); Saucedo v. UnitedHealthcare Ins. Co. of River Valley, No. CV 23-5214, 2025 WL 498531 (W.D. Ark. Jan. 27, 2025), report and recommendation adopted, No. 5:23-CV-5214, 2025 WL 495353 (W.D. Ark. Feb. 13, 2025) (determining exhaustion on summary judgment).

### 4. ERISA § 510

Pioneer finally argues there is no subject matter jurisdiction because Thompson failed to plead a viable claim under § 510 because he did not claim "Pioneer withheld any benefits," Thompson quit, and Thompson has not shown Pioneer had a specific intent to interfere. See Doc. 7 at 15–17. "Section 510 of ERISA makes it unlawful for an employer to discharge a participant in an employee benefit plan 'for exercising any right to which he is entitled under the provisions of an employee benefit plan' (retaliation) or 'for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan' (interference)." Manning v. Am. Republic Ins. Co., 604 F.3d 1030, 1042 (8th Cir. 2010) (quoting 29 U.S.C. § 1140). To prevail on a § 510 claim, "the employee must show '(1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled.'" Morris v. Winnebago Indus., Inc., 950 F. Supp. 918, 923 (N.D. Iowa 1996) (quoting Fischer v. Phila. Elec. Co., 96 F.3d 1533, 1543 (3d Cir. 1996)); see also Kimbro v. Atl. Richfield Co., 889 F.2d 869, 881 (9th Cir. 1989).

18

For the second element, "a plaintiff must prove that the defendant possessed a specific intent to interfere with her ERISA benefits." Barnhardt v. Open Harvest Co-op., 742 F.3d 365, 369 (8th Cir. 2014) (cleaned up and citation omitted). "This specific intent is present where the employee's (future or present) entitlement to protected benefits is a motivating factor in the employer's decision." Koons v. Aventis Pharms., Inc., 367 F.3d 768, 777 (8th Cir. 2004). For example, "§ 510 protects plan participants from termination motivated by an employer's desire to prevent a pension from vesting." Ingersoll–Rand Co. v. McClendon, 498 U.S. 133, 143 (1990).

To establish a § 510 claim, a plaintiff can rely on either "direct evidence of a specific intent to interfere with ERISA benefits or through the McDonnell Douglas burden-shifting framework." Barnhardt, 742 F.3d at 369 (citation omitted). "Direct evidence provides a strong causal link between the alleged discriminatory bias and the adverse employment action," whereas under the McDonnell Douglas burden-shifting framework, if the plaintiff "is able to establish a prima facie case of a section 510 violation, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its action. If the employer does so, then the burden shifts back to the claimant to prove that the proffered reason is pretextual." Id. at 369–70 (citations omitted). Thompson relies on Morrison v. FirsTier Bank, 26 F.3d 65 (8th Cir. 1994) to argue that "the Eighth Circuit has also recognized an employee's constructive discharge is actionable under ERISA's non-interference provision." Doc. 14 at 20; see also Morrison, 26 F.3d at 67–68 (reversing denial of motion for judgment as a matter of law where there was insufficient evidence to find employer had "actually or constructively discharged [plaintiff] because she had applied for long-term disability benefits or for the purpose of interfering with [plaintiff's] attaining long-term disability benefits").

19

Thompson has alleged, "Pioneer [] interfered with Thompson's ERISA-governed rights under the Plan (or other plans or documents) in violation of 29 U.S.C. § 1140 (ERISA § 510), and Thompson seeks all benefits, rights, and clarifications of his rights as permitted by ERISA for Pioneer's unlawful interference." Doc. 1 ¶ 32. Thompson also alleges that he was constructively terminated by Pioneer because Pioneer created intolerable working conditions. Id. ¶¶ 18–21. These allegations are sufficient to state a § 510 claim.

## C.  Supplemental Jurisdiction

Pioneer concludes its motion to dismiss by arguing that this Court does not have supplemental jurisdiction over Thompson's two state-law claims without his federal claim. Doc. 7 at 17–18. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Thompson's remaining claims in Counts 2 and 3 so long as the ERISA claim remains. Section 1367 states that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." Thompson's remaining claims for declaratory relief and breach of employment agreement involve the same parties, underlying facts, and employment relationship relevant to Thompson's ERISA claim. Doc. 1 at 6–8. Because Thompson's ERISA claim survives the motion to dismiss, federal supplemental jurisdiction remains over his state-law claims.

## D. Standing

In its reply brief, Pioneer raises for the first time that Thompson lacks standing to bring his ERISA claim because he has already withdrawn his vested benefits from the Plan prior to filing the Complaint. Doc. 16 at 11–12. Raising a new argument for dismissal in a reply brief is

improper, but this Court will address it anyway to avert another motion challenging Thompson's standing.

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" Murthy v. Missouri, 603 U.S. 43, 56 (2024); see also Clapper v. Amnesty Int'l USA, 568 U.S. 398, 408 (2013). Federal courts do not "operate as an open forum for citizens 'to press general complaints about the way in which government goes about its business.'" FDA v. All. for Hippocratic Med., 602 U.S. 367, 379 (2024) (quoting Allen v. Wright, 468 U.S. 737, 760 (1984)). Courts implement this limit through different justiciability doctrines, including standing and ripeness. DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 352 (2006). Broadly speaking, the standing inquiry concerns whether the plaintiff is the appropriate party to bring a particular suit. Raines v. Byrd, 521 U.S. 811, 818 (1997); Flast v. Cohen, 392 U.S. 83, 99–100 (1968). The three requirements for standing are (1) an injury in fact, (2) a causal connection between the injury and the challenged law, and (3) a likelihood that a favorable decision will redress the injury. All. for Hippocratic Med., 602 U.S. at 380; Animal Legal Def. Fund v. Vaught, 8 F.4th 714, 718 (8th Cir. 2021) (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992)). Standing is jurisdictional, requiring a federal court to consider all standing defects, even those parties may overlook. See Young Am.'s Found. v. Kaler, 14 F.4th 879, 887 (8th Cir. 2021) (requiring the court raise the "threshold issue" of standing "sua sponte if need be" (cleaned up and citations omitted)).

To satisfy Article III standing, an injury in fact "must be concrete and particularized and actual or imminent, not conjectural or hypothetical." Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158 (2014) (cleaned up and citation omitted). A "concrete" injury means "that it must be real and not abstract." All. for Hippocratic Med., 602 U.S. at 381. A "particularized" injury means that it "must affect 'the plaintiff in a personal and individual way' and not be a generalized

21

grievance." Id. (quoting Lujan, 504 U.S. at 560 n.1). "Moreover, the injury must be actual or imminent, not speculative—meaning that the injury must have already occurred or be likely to occur soon." Id. "The second and third standing requirements—causation and redressability—are often 'flip sides of the same coin.'" Id. at 380 (citation omitted). Causation requires a plaintiff to show an "injury likely was caused or likely will be caused by the defendant's conduct." Id. at 382. "[T]he causation requirement screens out plaintiffs who were not injured by the defendant's action." Id. at 383. Where the defendant's action caused injury, redressability—the third element of standing—typically exists through injunctive action or an award of damages. Id. at 381.

A plaintiff bears the burden of establishing standing as of the time the lawsuit was brought and throughout the pendency of the case. See Carney v. Adams, 592 U.S. 53, 59–60 (2020). "[S]tanding is not dispensed in gross," TransUnion LLC v. Ramirez, 594 U.S. 413, 431 (2021), but requires a plaintiff to "demonstrate standing for each claim that they press against each defendant, and for each form of relief that they seek," Murthy, 603 U.S. at 61 (cleaned up and citation omitted). "Because these requirements are 'an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of litigation.[']" Young Am.'s Found., 14 F.4th at 887 (quoting Bernbeck v. Gale, 829 F.3d 643, 646 (8th Cir. 2016)). At the pleading stage, "the plaintiff may rely on 'general factual allegations of injury resulting from the defendant's conduct.'" Id. at 888 (quoting Lujan, 504 U.S. at 561).

An ERISA plaintiff may establish Article III standing at the motion to dismiss stage by alleging an "actual injury to his own Plan account," that the injury is fairly traceable to the defendant's conduct because of "a causal connection between [the defendant's] actions . . . and his injury," and that "the injury is likely to be redressed by a favorable judgment." Braden, 588 F.3d

22

at 592; see also Smith v. UnitedHealth Grp. Inc., 106 F.4th 809, 813 (8th Cir. 2024) ("The plaintiffs in Mitchell alleged a breach of contract that could be redressed by an award of contractual benefits." (citing Mitchell v. Blue Cross Blue Shield of N.D., 953 F.3d 529, 536 (8th Cir. 2020) (holding that "[t]he denial of benefits to which a plan participant is contractually entitled is a 'particularized' injury that affects the participant in 'a personal and individual way' [and] [is] [concrete]" and "[a] court can redress this injury by awarding the contractual benefits to which the participant is entitled"))). "[A] plaintiff with Article III standing may proceed under § 1132(a)(2) on behalf of the plan or other participants." Braden, 588 F.3d at 593.

Thompson has satisfied Article III standing for his ERISA claim. The Complaint alleges that Pioneer interfered with his ERISA rights and breached the Plan terms, and Thompson "seeks to recover benefits due to him under the Plan, to enforce his rights under the terms of the Plan, and to clarify his rights to future benefits under the terms of the Plan (or other ERISA-regulated plans or documents yet to be discovered)." Doc. 1 ¶¶ 27–33. Thompson has alleged an "actual injury to his own Plan account," that the injury is fairly traceable to Pioneer's conduct because of "a causal connection between [Pioneer's] actions . . . and his injury," and that "the injury is likely to be redressed by a favorable judgment." Braden, 588 F.3d at 592. Taking these allegations as true, Thompson has established Article III standing. See Young Am.'s Found., 14 F.4th at 887.

However, when arguing that Thompson does not have standing, Pioneer appears to assert a statutory standing argument. See Doc. 16 at 11; Harzewski v. Guidant Corp., 489 F.3d 799, 803–04 (7th Cir. 2007) (noting "the question whether an ERISA plaintiff is a 'participant' entitled to recover benefits under the Act should be treated as a question of statutory interpretation fundamental to the merits of the suit rather than as a question of the plaintiff's right to bring the suit"); Sundown by Farkas v. Aetna Life Ins. Co., No. 23-CV-1905, 2024 WL 1051165, at *5

(E.D.N.Y. Jan. 16, 2024) ("Challenges to a plaintiff's statutory authorization are properly understood as Rule 12(b)(6) motions to dismiss for failure to state a claim."). Under 29 U.S.C. § 1132(a), "a participant or beneficiary" may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." A participant, as defined under ERISA, includes

> any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

29 U.S.C. § 1002(7).

The Supreme Court has interpreted this definition to "mean either employees in, or reasonably expected to be in, currently covered employment, or former employees who have . . . a reasonable expectation of returning to covered employment or who have a colorable claim to vested benefits." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 117 (1989) (cleaned up and citations omitted). To establish that a claimant "may become eligible" for benefits, he or she "must have a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future." Id. at 117–18. In other words, "[a] former employee who has neither a reasonable expectation of returning to covered employment nor a colorable claim to vested benefits, however, simply does not fit within the phrase may become eligible." Id. at 118 (cleaned up and citation omitted).

Following Bruch, several circuits, including the Eighth Circuit, "have crafted an exception to the Bruch requirement for cases in which, 'but for the employer's conduct alleged to be in violation of ERISA,' the employee or former employee would be a plan participant." Adamson v. Armco, Inc., 44 F.3d 650, 654–55 (8th Cir. 1995) (quoting Christopher v. Mobil Oil Corp., 950

24

F.2d 1209, 1221 (5th Cir. 1992)) (collecting cases). This exception only applies where the breach of duty has deprived the "plaintiff of participant status," and it "does not apply to claimants whose loss of participant status resulted from their own actions." Id. at 655 (holding that former employees who allowed their claims for benefits to become time-barred were no longer participants and therefore lacked standing). The Supreme Court has since clarified that even after withdrawing funds from the ERISA-governed plan, "a former employee with a colorable claim for benefits" has "a legally cognizable interest in the outcome of the case, and was indeed a plan 'participant' for purposes of ERISA." Morrison v. MoneyGram Int'l, Inc., 607 F. Supp. 2d 1033, 1044 (D. Minn. 2009) (quoting LaRue v. DeWolff, Boberg & Assocs., Inc., 552 U.S. 248, 256 n.6 (2008)); see also Mitchell, 953 F.3d at 536–37. Therefore, Thompson's statutory standing at this stage turns on whether he has pleaded a colorable claim for benefits.

However, before this Court reviews Thompson's claim further, it considers the issues presented by Pioneer's standing argument. Pioneer asserts, "It is undisputed that Thompson ended his participation in the subject profit sharing plan on September 12, 2024, and withdrew his vested benefits a year and several months prior to filing this complaint." Doc. 16 at 11 (citing Sealed Exhibit H to Affidavit of Schreiber, 5:24-cv-0500).[4] Therefore, Pioneer argues that Thompson no longer qualifies as a participant under 29 U.S.C § 1132(a), and therefore, cannot bring a civil action. Id. However, this affidavit and the facts therein are beyond the four corners of the Complaint, and thus are not embraced by the Complaint.

In addition, Pioneer has raised this statutory standing argument in its reply brief. "[A]rguments challenging a plaintiff's entitlement to relief under a particular statute are subject to ordinary procedural rules and may be forfeited if not timely raised." Judy Shaw Found., Inc. v.

---

[4] This Court believes that Pioneer meant to cite to Doc. 80-8 in the 2024 case, No. 5:24-cv-5067.

City of Howard, No. 4:23-CV-04039, 2026 WL 368891, at *2 (D.S.D. Feb. 10, 2026). The Eighth

Circuit generally "will not consider arguments raised for the first time in a reply brief." Gatewood

v. City of O'Fallon, 70 F.4th 1076, 1080 (8th Cir. 2023) (citation omitted). The Eighth Circuit has

noted, "[w]hen courts have exercised their authority to decline consideration of issues raised in

reply briefs, they have typically done so out of concern that the opposing party would be prejudiced

by an advocate arguing an issue without an opportunity for the opponent to respond." Id. (quoting

United States v. Head, 340 F.3d 628, 630 n.4 (8th Cir. 2003)). This Court declines to consider this

statutory standing issue further at this time.

## IV. Conclusion

For the foregoing reasons, it is

ORDERED that Pioneer's Motion to Dismiss, Doc. 6, is denied.

DATED this 17th day of April, 2026.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE

26