UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| ANDREW TAYLOR THOMPSON,<br><br>Plaintiff,<br><br>vs.<br><br>PIONEER BANK & TRUST,<br><br>Defendant. | 5:26-CV-05002-RAL<br><br>OPINION AND ORDER DENYING MOTION TO DISMISS, DENYING MOTION FOR DISCOVERY, AND GRANTING IN PART AND DENYING IN PART MOTION FOR PARTIAL SUMMARY JUDGMENT |

Plaintiff Andrew Taylor Thompson (Thompson) and Defendant Pioneer Bank & Trust (Pioneer) continue to litigate issues related to the cessation of Thompson's employment as a financial advisor with Pioneer. On July 31, 2026, this Court held a hearing on pending motions: (1) Thompson's motion for partial summary judgment on Count 2 of his Complaint, which seeks declaratory judgments related to his Employment Agreement, Docs. 1, 21; (2) Pioneer's motion for discovery under Federal Rule of Civil Procedure 56(d), seeking to delay ruling on the motion for partial summary judgment until after discovery on Thompson's new ERISA claims, Docs. 26, 27; and (3) Pioneer's second motion to dismiss, or alternatively, stay this case, Doc. 29. This Court denies the motions to dismiss or stay the case and to defer ruling on matters of law pending discovery sought by Pioneer, and grants in part and denies in part partial summary judgment on Count 2 to the extent detailed below.

## I. Procedural Background and Facts Relevant to Motion to Dismiss or Stay

In 2006, Thompson and Pioneer entered into the Pioneer Bank & Trust Registered Representative Employment Agreement (Employment Agreement) under which Pioneer employed Thompson as a financial advisor. Doc. 1 at 2; Doc. 1-1. While working for Pioneer, Thompson was a participant in the Pioneer Bank & Trust Employees Profit Sharing Retirement Plan (the Plan) dated January 1, 2019, and as potentially amended thereafter. Doc. 1 at 2; Doc. 1-2. Thompson worked for Pioneer until August 2024 when Thompson alleges that he was compelled to resign. Doc. 1 at 2–3. Thompson informed Pioneer of his resignation by providing Pioneer with a Notice of Resignation of Employment and Termination of Employment Agreement (Notice of Resignation). Id.; Doc. 1-3.

This is not the first case between Thompson and Pioneer. On August 26, 2024, Thompson sued Pioneer here in the United States District Court for the District of South Dakota. Thompson v. Pioneer Bank & Trust, Case No. 5:24-cv-5067-RAL (Thompson I), Doc. 1. The Complaint in Thompson I stated three claims against Pioneer: (1) an Employee's Retirement Income Security Act (ERISA) claim alleging that an unexecuted draft Salary Continuance Agreement (SCA) was an ERISA-governed employee benefits plan that Pioneer had breached and that Pioneer had interfered with Thompson's ERISA-governed rights in violation of Section 510 of ERISA under that document; (2) a declaratory judgment claim seeking various declarations relating to the Employment Agreement and Thompson's resignation; and (3) a claim of breach of the

Employment Agreement. Id. There is no diversity of citizenship between Thompson and Pioneer, so the ERISA claim provided the basis for federal jurisdiction.

One day later, on August 27, 2024, Pioneer filed a summons and petition[1] in Pennington County state court. Pioneer Bank & Trust v. Thompson, Case No. 51CIV-24-1245 (S.D. 7th Cir. Pennington Cnty.) ("the state case"); see Doc. 40-1 (copy of the summons); Doc. 40-2 (copy of

---

[1] Thompson argues that the difference between a petition and complaint matters under South Dakota law for the purposes of determining whether Pioneer properly commenced its state court civil action. See Doc. 39 at 5–7. South Dakota statutes define the following documents as permissible types of pleadings:

> There shall be a *complaint* and an answer; a reply to a counterclaim denominated as such; an answer to a cross-claim, if the answer contains a cross-claim; a third-party complaint, if a person who was not an original party is summoned under the provisions of § 15-6-14; and a third-party answer, if a third-party complaint is served. *No other pleading shall be allowed*, except that the court may order a reply to an answer or a third-party answer.

SDCL § 15-6-7(a) (emphasis added). Certain South Dakota statutes specify the use of a petition to commence a certain type of proceeding, such as a worker's compensation proceedings or a challenge to a county zoning decision. Doc. 39 at 5 (citing SDCL chapters 62-7, 11-2). However, when detailing what is required on the summons form necessary to commence a civil action, like the statutory provision on permissible pleadings, the South Dakota statute on summons forms employs the term, "complaint," not "petition":

> [The summons] shall be directed to the defendant, and shall require him to answer the complaint and serve a copy of his answer on the subscriber at the subscriber's address within thirty days after the service of the summons, exclusive of the day of service, and shall notify him that in case of his failure to answer, judgment by default may be rendered against him as requested in the complaint.

SDCL § 15-6-4(a). The summons served upon Thompson only required him to answer a petition. See Doc. 40-1. Pioneer argues in its reply that under SDCL §§ 21-8-9 and 21-8-15, a party can commence a civil action in South Dakota by serving a petition for a permanent injunction. Doc. 44 at 1. This is less than clear, as SDCL § 21-8-9 provides, "If a complaint or other pleading is served, it may, if sufficient, be used as part of or in lieu of the affidavit for a temporary restraining order or preliminary injunction, so far as applicable, but this shall not restrict such showing by affidavit as the applicant elects to make." SDCL § 21-8-9. Meanwhile, section 21-8-15 provides, "A permanent injunction is obtained by a judgment or decree in a civil action under the procedure applicable to all civil actions and subject to the limitations of this chapter or other applicable statutes." SDCL § 21-8-15. Ultimately, this Court need not resolve the dispute over whether Pioneer's "petition" served with a summons properly started a state civil case.

the petition). Pioneer's process server served Thompson on August 27, 2024, with that summons and petition seven hours after Pioneer was served with the federal lawsuit and the day after Thompson had delivered the federal lawsuit pleadings to the sheriff. Doc. 30-4 at 2–3 (citing Certificate of Service in No. 51CIV-24-1245). In the state case, Pioneer sought (1) a permanent injunction ordering Thompson "to cease all activities in violation of the non-compete and non-solicitation provisions"; and (2) damages resulting from Thompson's breach of the employment agreement, including attorney's costs and fees. Doc. 40-2 at 3. On September 25, 2024, Thompson moved to dismiss or stay the state case given the previously filed federal action, see Doc. 30-4. On April 25, 2025, the state court stayed the state case pending an order in the pending federal case after the parties entered into a stipulation, see Doc. 30-3 at 1; Doc. 40-3 at 1.

Pioneer filed an immediate motion to dismiss in Thompson I, arguing an absence of federal jurisdiction because the SCA underlying the ERISA claim in Thompson I was never signed. Thompson I, Doc. 4. Despite being skeptical that the draft SCA could support an ERISA claim, this Court denied the motion to dismiss for lack of federal jurisdiction in Thompson I because the United States Court of Appeals for the Eighth Circuit had held in Sanzone v. Mercy Health, 954 F.3d 1031, 1038 (8th Cir. 2020) that "whether a plan is an ERISA plan is an element of the plaintiff's case and not a jurisdictional inquiry." Thompson I, Doc. 14, No. 5:24-CV-05067-RAL, 2025 WL 888894, at *4-5 (D.S.D. Mar. 21, 2025).

Thompson then filed a motion for partial summary judgment on Count 2 of his Complaint in Thompson I concerning the non-compete and non-solicitation clauses. Thompson I, Doc. 18; Doc. 21 at 2. Pioneer opposed partial summary judgment and filed a motion for discovery under Rule 56(d). Doc. 22. These two motions are very similar to the ones now pending in this case. This Court denied Pioneer's motion for discovery in Thompson I because "leave to conduct

additional discovery under Rule 56(d) [was] unnecessary as to the limited issues Thompson chose to frame in his motion for partial summary judgment," which were purely legal issues of contract interpretation. Thompson I, 2025 WL 2083909, at *5–7. However, this Court deferred ruling on Thompson's motion for partial summary judgment awaiting the close of discovery and anticipating a motion for summary judgment on the lone federal claim that Thompson had an ERISA claim under the draft SCA. Id. at *7.

On December 31, 2025, following the close of discovery, Pioneer filed a motion for summary judgment on the ERISA claim in Thompson I, which this Court granted. Thompson I, Doc. 58. This Court reasoned that "[b]ecause the SCA was never executed, it is not an ERISA-governed plan binding on the parties, and Thompson cannot bring an ERISA claim under 29 U.S.C. § 1132(a) based on the draft SCA." Id. at 12. Because the only federal claim in Thompson I had failed, this Court declined to exercise supplemental jurisdiction over Thompson's remaining two state-law claims. Id. at 13. Thompson had realized the problems with the theory of the draft SCA being a source of ERISA rights and argued in briefing that the Plan instead was the source of ERISA rights. Despite Thompson's creativity in arguing that his complaint was vague enough to embrace the new theory, this Court refused to let Thompson effectively amend his ERISA claim in a post-discovery response brief when Pioneer had not been on notice of any ERISA claim in Thompson I other than one based on the draft SCA. Id. at 10.

On January 7, 2026, Pioneer then filed in the state case a "motion to lift stay and other motions." Doc. 40-3. Pioneer requested that the state court (1) lift the stay; (2) deny Thompson's 2024 state motion to dismiss as moot; (3) allow amendment of Pioneer's petition to account for new facts; and (4) allow Pioneer to also file a complaint in addition to the amended petition. Id. Pioneer's motion attached a proposed amended petition and a proposed complaint. Doc. 40-4.

The proposed complaint alleged two counts: (1) breach of employment agreement and (2) tortious interference with plaintiff's customers. Id. at 9.

On January 12, 2026, Thompson filed this second federal case, No. 5:26-cv-5002-RAL. Doc. 1. Thompson's Complaint changes the basis of his ERISA claim and makes the same two state law claims against Pioneer. Id. Thompsons's ERISA claim alleges that the Plan was an ERISA-governed employee benefits plan that Pioneer breached, and that Pioneer interfered with Thompson's ERISA-governed rights in violation of Section 510 of ERISA under the Plan (or other plans or documents). His second count seeks declaratory judgment relating to the Employment Agreement and Thompson's resignation and his third count states a claim of breach of the Employment Agreement. Id. Thompson attached three documents to his Complaint: the Employment Agreement, the Plan, and the Notice of Resignation. Docs. 1-1, 1-2, 1-3. Thompson alleges this Court has jurisdiction under 28 U.S.C. § 1331 over Count 1 and supplemental jurisdiction under 28 U.S.C. § 1367 over Counts 2 and 3. Doc. 1 at 2. The only material difference between the Complaint filed in 2024 and the current Complaint is that the ERISA count relies primarily, but not exclusively, on the Plan instead of the unexecuted draft SCA. Compare Doc. 1 with Thompson I, Doc. 1. The exhibits attached are the same except that the Plan has replaced the SCA.

On January 23, 2026, before the state court had ruled on Pioneer's pending motion to lift the stay, deny the motion to dismiss, amend the petition, and file a complaint, Pioneer unilaterally served Thompson with a complaint in the state case. Doc. 30-3. The complaint served was different from the proposed complaint that Pioneer filed with the state court two weeks before. Compare Doc. 40-4 (proposed complaint) with Doc. 30-3 (served complaint). In addition to differently worded pleadings, the served complaint added a third count requesting a permanent

injunction, incorporating by reference the petition for permanent injunction. Doc. 30-3 at 4–5. The state case does not contain any ERISA claim or claim addressing the Plan. On January 27, 2026, the state court issued a one-line order denying Pioneer's motion to lift the stay: "Based on the filings of the parties and oral arguments of counsel for the parties at the hearing on January 21, 2026, the Court denies Plaintiff's Motion to Lift Stay dated January 7, 2026, pending Defendant's appeal in *Andrew Taylor Thompson v. Pioneer Bank & Trust*, 5:24-cv-05067." Doc. 30-2.

On January 29, 2026, Pioneer filed its first motion to dismiss in this case arguing an absence of federal jurisdiction over the ERISA claim, res judicata, waiver and absence of exhaustion. Doc. 6. After a hearing on April 3, 2026, this Court denied that motion. Docs. 17, 18, 20. Based on discussion with counsel during the April 3 hearing, and contemplating Pioneer refiling for dismissal in favor of the state-court suit, and Thompson seeking partial summary judgment on his declaratory judgment claims, this Court issued an Order Setting Deadlines. The Order Setting Deadlinesnoted, "Discovery occurred in the underlying case [Thompson I], and no additional discovery appears necessary to resolve the motions this Court anticipates the parties to file." Doc. 19 at 1 (citing Fed. R. Civ. P. 1); see also Doc. 20 at 35–36. This Court set a deadline of May 1, 2026, for Thompson to file his motion for partial summary judgment and for Pioneer to file any motion requesting that this Court abstain from deciding this case to allow the state case to proceed. Id. at 1–2. Thompson has now filed essentially the same motion for partial summary judgment as he did in Thompson I, and Pioneer filed a motion to dismiss and a motion for discovery under Rule 56(d) seeking discovery on Thompson's standing to bring an ERISA claim mirroring its previous motion in Thompson I. See Thompson I, 2025 WL 2083909 at *# (or doc. #). This Court heard argument from both parties on the pending motions on July 31, 2026.

## II. Pioneer's Motion to Dismiss and/or Stay

### A. First-Filed Rule and Colorado River Abstention

Pioneer invokes the first-filed rule as a basis for dismissal or a stay in favor of its state-court action. The first-filed "rule provides that in cases of concurrent jurisdiction [between two federal district courts], 'the first court in which jurisdiction attaches has priority to consider the case.'" Beber v. NavSav Holdings, LLC, 140 F.4th 453, 459 (8th Cir. 2025) (quoting Orthmann v. Apple River Campground Inc., 765 F.2d 119, 121 (8th Cir. 1985)); see also Lewis & Clark Reg'l Water Sys., Inc. v. Carstensen Contracting, Inc., 339 F. Supp. 3d 886, 892–93 (D.S.D. 2018). The first-filed rule "conserve[s] judicial resources and avoid[s] conflicting rulings." Nw. Airlines, Inc. v. Am. Airlines, Inc., 989 F.2d 1002, 1006 (8th Cir. 1993) (citing U. S. Fire Ins. Co. v. Goodyear, 920 F.2d 487, 488 (8th Cir.1990)). However, the rule "is not intended to be rigid, mechanical, or inflexible." Id. at 1005 (quoting Goodyear, 920 F.2d at 488). Additionally, "[a]s a flexible, fact-sensitive rule, the first-filed rule does not require perfect symmetry in claims or parties. . . . the parties and claims need only be substantially similar." Masud v. TD Ameritrade, Inc., No. 8:24-CV-499, 2025 WL 1644423, at *4 (D. Neb. June 10, 2025) (citing Siruk v. Robinhood Fin. LLC, No. 21-CV-0415 (PJS/DTS), 2021 WL 1997252, at *2 (D. Minn. Mar. 31, 2021) (collecting authority)).

The rule "yields to the interests of justice, and will not be applied where a court finds 'compelling circumstances' supporting its abrogation." Id. at 1006 (quoting Goodyear, 920 F.2d at 488). "The party opposing the first-filed rule has the burden of showing compelling circumstances." Lewis & Clark Reg'l Water Sys., Inc., 339 F. Supp. 3d at 892 (citing D & L Distribution, LLC v. Agxplore Int'l, LLC, 959 F. Supp. 2d 757, 766 (E.D. Pa. 2013)). Compelling circumstances that may justify departing from the first-filed rule can be shown by "two red flags"

according to Eighth Circuit precedent. Anheuser-Busch, Inc. v. Supreme Int'l Corp., 167 F.3d 417, 419 (8th Cir. 1999). "Even if both red flags are present, however, [i]n the absence of bad faith, the mere presence of red flags does not necessarily warrant setting aside the first-to-file rule." Hearth & Home Techs., Inc. v. J & M Distrib., Inc., No. 12-CV-00686 SRN/TNL, 2012 WL 5995232, at *5 (D. Minn. Nov. 30, 2012) (quotations and internal quotation marks omitted). The first red flag is the first-filed party's notice that the other party was going to file suit. Id. A court can choose not to apply the first-filed rule if, after a party receives notice that the other party is going to file suit, the notified party "raced to the courthouse to usurp [the other party's] forum choice." Anheuser-Busch, Inc., 167 F.3d at 419; see also Nw. Airlines, Inc., 989 F.2d at 1007 (holding a letter that "gave no indication that a lawsuit was imminent" was insufficient to be a compelling circumstance to depart from the first-filed rule). The second red flag that may justify departing from the first-filed rule is when the first-filed action is for declaratory judgment rather than for damages or equitable relief. Nw. Airlines, Inc., 989 F.2d at 1007; Anheuser-Busch, Inc., 167 F.3d at 419. "[D]eclaratory judgments are not to be used defensively to deny a prospective plaintiff's choice of forums." Prudential Ins. Co. of Am. v. Does, 140 F.3d 785, 790 (8th Cir. 1998). A suit for a declaratory judgment "may be more indicative of a preemptive strike than a suit for damages or equitable relief." Nw. Airlines, Inc., 989 F.2d at 1007.

"But 'first filed' is not a 'rule.'" Smart v. Sunshine Potato Flakes, LLC, 307 F.3d 684, 687 (8th Cir. 2002). "It is a factor that typically determines, 'in the absence of compelling circumstances,' which of two concurrent *federal* court actions should proceed to judgment." Id. (quoting Goodyear, 920 F.2d at 488) (emphasis added). Parallel proceedings in a *state* and federal court trigger consideration of Colorado River abstention. See id. (citing Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co., 529 U.S. 193, 198 (2000)). "[W]hen the issue is whether a federal court

should defer to a pending suit in state court, . . . the order in which jurisdiction was obtained, while still a relevant factor in applying the abstention doctrine, is far less apt to be determinative because of the federal court's 'virtually unflagging obligation' to exercise its jurisdiction." Id. (quoting Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 817–18 (1976)).

"Colorado River permits federal courts to decline to exercise jurisdiction over cases where 'parallel' state court litigation is pending, meaning that there is a substantial likelihood that the state proceeding will fully dispose of the claims presented in the federal court." Spectra Comm. Grp., LLC v. City of Cameron, Mo., 806 F.3d 1113, 1121 (8th Cir. 2015) (cleaned up and citations omitted). Under Eighth Circuit precedent, "Colorado River abstention is appropriate only in 'exceptional circumstances' where the surrender of federal jurisdiction is supported by 'the clearest of justifications.'" Id. (quoting Moses H. Cone Mem. Hosp. v. Mercury Const. Corp., 460 U.S. 1, 25–26 (1983)). A court considers six factors to determine whether there are exceptional circumstances and weighs them "in a pragmatic, flexible manner with a view to the realities of the case at hand." Id. (quoting Moses H. Cone, 460 U.S. at 16). These factors include:

> (1) whether there is a res over which one court has established jurisdiction, (2) the inconvenience of the federal forum, (3) whether maintaining separate actions may result in piecemeal litigation, unless the relevant law would require piecemeal litigation and the federal court issue is easily severed, (4) which case has priority—not necessarily which case was filed first but a greater emphasis on the relative progress made in the cases, (5) whether state or federal law controls, especially favoring the exercise of jurisdiction where federal law controls, and (6) the adequacy of the state forum to protect the federal plaintiff's rights.

Id. (quoting Federated Rural Elec. Ins. Corp. v. Ark. Elec. Coops., Inc., 48 F.3d 294, 297 (8th Cir. 1995)). This analysis favors "the most complete action," or the one including all parties and claims. See id. at 1122.

The factors to consider in whether to abstain under Colorado River make clear that "exceptional circumstances" favoring abstention are absent here. First, there is no "res" over

which one court has established jurisdiction. Second, the Western Division of the District of South Dakota, located in Rapid City, is not inconvenient and is indeed as convenient as Pennington County state court which is also located in Rapid City. Third, there is a greater risk of piecemeal litigation in state court where, as explained below, jurisdiction over the § 510 ERISA claim in this federal case is lacking, though concurrent jurisdiction exists over the § 502 ERISA claim. Fourth, although the summons and petition served in the state case predates this second federal case, more progress has occurred in this federal litigation than in the stayed state case with discovery completed in Thompson I on the claims that form the second and third counts in Thompson II. Fifth, federal law controls the ERISA claim in count one, though state law controls counts two and three. Sixth, the state forum is adequate to protect most of plaintiff's rights, but for the lack of state jurisdiction over the § 510 ERISA claim where there is exclusive federal jurisdiction.

In a similar case, the Northern District of Iowa looked to the Sixth Circuit, which has "clarified that the analysis of the 'parallelism' prerequisite looks at the two [federal and state] proceedings as they currently exist, not as they could be modified to mirror each other." Cent. States Indus. Supply, Inc. v. McCullough, 218 F. Supp. 2d 1073, 1086 (N.D. Iowa 2002) (citing Baskin v. Bath Twp. Bd. of Zoning Appeals, 15 F.3d 569, 572 (6th Cir. 1994) (reasoning that, "[w]hile it may be true . . . that [the state court proceeding] could be modified so as to make it identical to the current federal claim, that is not the issue here. The issue is whether [the state court proceeding], as it currently exists, is a parallel, state-court proceeding.")). "Moreover, even where the claims arose out of 'the same basic facts, the court considered "parallelism" in terms of whether one of the actions, as it then existed, could afford 'complete relief,' observing that, where the state court could not afford some of the relief available in the federal forum, the federal court should

not abstain." Id. at 1086–87 (citing Baskin, 15 F.3d at 572 (involving different aspects of a zoning variance and requests for different kinds of relief)).

Here, the state case is not parallel to this case in the sense that the state case does not include the ERISA claim and cannot include Thompson's § 510 ERISA claim. In this case, Thompson in alleges in Count I violations of ERISA § 502(a)(1)(B) and § 510. Compare Doc. 30-3 with Doc. 1. Even if Pioneer wanted to litigate the ERISA issues in state court, under ERISA,

> *[e]xcept for actions under subsection (a)(1)(B)* of this section, *the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter* brought by the Secretary or by a participant, beneficiary, fiduciary, or any person referred to in section 1021(f)(1) of this title. *State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under paragraphs (1)(B) and (7) of subsection (a) of this section.*

29 U.S.C. § 1132 (emphasis added); see also id. § 1140 ("The provisions of section 1132 of this title shall be applicable in the enforcement of this section [§ 510]."). Therefore, although there is concurrent jurisdiction over the claim under ERISA § 502(a)(1)(B), the declaratory judgment claim seeking various declarations relating to the Employment Agreement and Thompson's resignation, and the Employment Agreement breach claim, this Court has exclusive jurisdiction over Thompson's claim under ERISA § 510. See id. These "claims arose out of 'the same basic facts," but the state action, as it now exists, cannot "afford 'complete relief,' . . . [as] the state court could not afford some of the relief available in the federal forum, the federal court should not abstain." Cent. States Indus. Supply, Inc., 218 F. Supp. 2d at 1086–87. Pioneer's motion to dismiss or stay the case under the first-filed rule and Colorado River abstention is denied.

### B. Supplemental Jurisdiction

Pioneer also requests that this Court decline to exercise supplemental jurisdiction over Thompson's state-law claims for declaratory judgment relating to the Employment Agreement and

Thompson's resignation, and for breach of the Employment Agreement. Doc. 34 at 3. Pioneer argues that (1) the state-law claims predominate Thompson's ERISA claim; (2) judicial economy supports having the parties litigate in the state court case; and (3) the non-compete and non-solicitation clauses raise complex and novel state law issues as the South Dakota Supreme Court has not ruled on some matters and the Eighth Circuit has reversed other district judges' decisions interpreting South Dakota law on such clauses. Id. at 4–7. This Court previously declined to exercise supplemental jurisdiction in Thompson I after granting summary judgment on the ERISA claim based on a draft SCA never entered into by Thompson and Pioneer. The current ERISA claims are based on a Plan that Pioneer sponsored, andThompson participated in when employed at Pioneer.

Under 28 U.S.C. § 1367(c),

> district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a)[, detailing that district courts have supplemental jurisdiction over claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy,] if—
>
> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

None of these factors militate in favor of declining supplemental jurisdiction over the state-law claims now that there is an ERISA claim based on an actual agreement. South Dakota law on non-compete and non-solicitation is not particularly novel or complex, and there are several recent federal court decisions on point. The ERISA claim is Thompson's vehicle for being in federal

court, but his state-law claims do not *substantially* predominate the ERISA claim to such a degree that declining supplemental jurisdiction is warranted. The ERISA claim appears to be viable, and no compelling reasons exist for declining supplemental jurisdiction exist at this time, unlike in Thompson I. Pioneer's motion to dismiss or stay is denied.

### III. Pioneer's Motion for Discovery

Pioneer has moved pursuant to Federal Rule of Civil Procedure 56(d) to conduct discovery prior to this Court deciding Thompson's motion for partial summary judgment, principally on whether Thompson has viable ERISA claims under the Plan and other documents. Docs. 26, 27, 28. Specifically, Pioneer seeks discovery on "whether Thompson, as he must under ERISA, in fact claims that the alleged acts were taken [by Pioneer] for the purpose of interfering with his rights or benefits under the plan and what benefits he claims he is seeking to recover and the basis for such claims." Doc. 27 at 4. Thompson opposes this motion. Doc. 41.

Summary judgment is proper "only after the nonmovant has had adequate time for discovery." Hamilton v. Banes, McCullen, Butler, Foye & Simmons, L.L.P., 687 F.3d 1045, 1049 (8th Cir. 2012) (cleaned up and citation omitted). Rule 56(d) allows a court to "defer considering a summary judgment motion or allow time for discovery '[i]f a nonmovant shows by affidavit or declaration that, for specific reasons, it cannot present facts essential to justify its opposition.'" Anzaldua v. Ne. Ambulance & Fire Prot. Dist., 793 F.3d 822, 836 (8th Cir. 2015) (quoting Fed. R. Civ. P. 56(d)). A party requesting discovery under Rule 56(d) must show: "(1) that they have set forth in affidavit form the specific facts that they hope to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are essential to resist the summary judgment motion." Marlow v. City of Clarendon, 78 F.4th 410, 416 (8th Cir. 2023) (citation omitted). The affidavit must "state with specificity what evidence further discovery would

uncover." Anzaldua, 793 F.3d at 837. "[U]nspecific assertion[s] [are] insufficient." Id. "If a party fails to carry its burden, postponement of a ruling on a motion for summary judgment is unjustified." Marlow, 78 F.4th at 416 (cleaned up and citation omitted).

"Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." Mansker v. TMG Life Ins. Co., 54 F.3d 1322, 1326 (8th Cir. 1995) (citation omitted). Additional discovery under Rule 56(d) is typically unnecessary when a motion for summary judgment presents a purely legal question like contract interpretation. See GEICO Cas. Co. v. Isaacson, 932 F.3d 721, 726–27 (8th Cir. 2019) (finding district court did not abuse discretion in denying additional discovery under Rule 56(d) because Missouri law prohibits introduction of extrinsic evidence to interpret unambiguous contract); Broadway Ford Truck Sales, Inc. v. Depositors Ins. Co., No. 4:20-CV-00999, 2021 WL 2075545, at *2 (E.D. Mo. May 24, 2021) (denying motion for discovery under Rule 56(d) where issue was matter of contract interpretation); Hillshire Brands Co. v. Travelers Cas. & Sur. Co., No. 15 C 06859, 2016 WL 6892885 at *2 (N.D. Ill. Nov. 23, 2016) ("[T]he Court should deny the Rule 56(d) motion only if the issues at stake are purely legal such that no facts could make a difference in the outcome of the case."); Sabeerin v. Fassler, No. 1:16-cv-00497, 2021 WL 1227726, at *4 (D.N.M. Apr. 1, 2021) (denying motion for Rule 56(d) discovery on "purely legal question of whether officers had arguable probable cause" to conduct a search). A court also considers whether the Rule 56(d) motion's sought discovery will "shed any light" on the matter at issue in a motion for partial summary judgment. See, e.g., Sliger v. Ag Sols. Grp., LLC, No. 8:22-CV-006, 2022 WL 20679653, at *4 (D. Neb. June 17, 2022) ("Thus, information about the [] Defendants' purported involvement in the design, assembly, and instructions concerning the products at issue and information relevant only to Plaintiff's negligence claim does not 'shed any light' on a matter at

issue in the summary judgment motion." (quoting In re Mirapex Prod. Liab. Litig., 912 F.3d 1129, 1135 (8th Cir. 2019))).

This Court already determined that Thompson's ERISA claims were adequately pleaded to survive Pioneer's motion to dismiss. Doc. 18. All discovery related to Count 2 on which Thompson seeks partial summary judgment was completed in Thompson I. Thompson's pending motion for partial summary judgment requests a declaratory judgment on three aspects of Count 2: "(1) Thompson's termination of the Employment Agreement was valid; (2) Thompson's termination of the Employment Agreement also terminated the non-compete clause; and (3) that the non-solicitation clause is unenforceable." Doc. 22 at 2. All three of these issues present a purely legal question of contract interpretation. See GEICO Cas. Co., 932 F.3d at 726–27. Just as before, Pioneer's motion for "leave to conduct additional discovery under Rule 56(d) is unnecessary as to the limited issues Thompson chose to frame in his motion for partial summary judgment." Thompson I, 2025 WL 2083909, at *5.

## IV. Thompson's Motion for Partial Summary Judgment

Thompson argues that there is no genuine issue of material fact concerning termination of the Employment Agreement and enforceability of the non-compete and non-solicitation clauses in the Employment Agreement. Doc. 22. Thompson seeks partial summary judgment on three aspects of Count 2. Id. at 2.

### A. Facts Not Subject to Genuine Dispute and Pioneer's Arguments on Count 2

The following facts are undisputed. Pioneer employed Thompson as a financial advisor pursuant to the Employment Agreement. Doc. 23 ¶ 1; Doc. 35 ¶ 1. Section 2 of the Employment Agreement defines the term of agreement as follows:

> 2. Term of Agreement. This Agreement may be terminated with or without cause at any time by either Party upon written notice of termination to the other,

> notwithstanding any other Financial Institution employment policy. This is an employment-at-will. In the event that Registered Representative's employment with Financial Institution hereunder is terminated by either party, it is agreed that Financial Institution may, however, require Registered Representative to immediately vacate the premises of Financial Institution and cease all contact with Financial Institution customers and clients provided, it is understood and agreed that Registered Representative's compensation shall be computed to the effective date of termination as provided for in the notice of termination.

Doc. 23 ¶ 2; Doc. 35 ¶ 2.

Section 3.p. of the Employment Agreement contains a non-solicitation agreement as follows:

> p. Registered Representative will not, during the term of this Agreement within the area described in Paragraph 21 thereof and for two (2) years thereafter or for so long as Financial Institution or its successor in interest continues to carry on a like business therein, whichever is the shorter, directly or indirectly, solicit or aid in the solicitation of the securities business of, or the transfer of any securities accounts of any Customer with whom Registered Representative dealt while employed by Financial Institution, nor shall the Registered Representative attempt to induce or cause any Customer to terminate or reduce their business relationship with Financial Institution, unless otherwise specifically authorized in writing by the Financial Institution. Registered Representative agrees that the covenants contained in this Paragraph are the essence of this Agreement, and that they shall survive this Agreement and apply whether either party terminates this Agreement with or without cause.

Doc. 23 ¶ 3; Doc. 35 ¶ 3.

Section 21 of the Employment Agreement contains a covenant not to compete clause as follows:

> 21. Restrictions. Registered Representative agrees that if Registered Representative terminates Registered Representative's employment with Financial institution [sic] or if Financial Institution terminates Registered Representative's employment with Financial Institution for cause that for a period of two (2) years after said termination of employment with Financial Institution, or for so long as Financial Institution or its successor in interest continues to carry on a like business within the following described area, whichever is the shorter, that Registered Representative shall not, within a radius of one hundred (100) miles from any branch office or facility of Financial Institution, either directly or indirectly, engage in the securities or commodities brokerage business, insurance sales business, or any other investment or investment advisory business. Further in the event of any

> termination of Registered Representative's employment by Registered Representative or Financial Institution with or without cause Registered Representative will not directly or indirectly, solicit or aid in the solicitation of the securities business of, or the transfer of any securities accounts of any customer with whom Registered Representative dealt with while a representative of Financial Institution, or BROKER/DEALER, nor shall the Registered Representative attempt to induce or cause any customer to terminate or reduce their business relationship with Financial Institution or its successor in interest continues to carry on a like business within the above described area, unless otherwise specifically authorized in writing by Financial Institution.
>
> During the term of Registered Representative's employment with Bank and within two (2) years after termination of such employment, Registered Representative will not either directly or indirectly for his account or as agent, representative, servant, employee, officer, director, employee [sic], or shareholder of any corporation, firm, or entity: (a) interfere with, disrupt or attempt to disrupt, the relationship, contracts, or otherwise between Bank and customers of Bank; (b) induce any person employed by Bank to leave such employment, including but not limited to branch management and administrative staff; (c) induce any registered representative of any broker/dealer or any broker/dealer from whom Bank receives commission of rides and/or advisory fees from sales of securities, insurance, and advisory services, to leave their affiliation with such broker/dealer and/or Bank; (d) engage, hire, employ or solicit the employment of any employees of Bank or its affiliates; (e) engage, hire, employ or solicit the employment of or affiliation with any of the persons mentioned in (c) above; (f) interfere with, destruct or attempt to destruct the relationships, associations or alliances, contractual or otherwise, between Bank and any third parties including but not limited to brokers/dealers, insurance companies, or insurance professionals.

Doc. 23 ¶ 4; Doc. 35 ¶ 4.

Thompson sent written Notice of Resignation to Pioneer on August 19, 2024. Doc. 23 ¶ 5 (citing Doc. 1-3); Doc. 35 ¶ 5 (admitting in part and adding that he was resigning his employment and terminating the Employment Agreement). Thompson quoted Section 2 of the Employment Agreement: "This Agreement may be terminated with or without cause at any time by either Party upon written notice of termination to the other, notwithstanding any other Financial Institution employment policy." Doc. 1-3. Thompson claimed that he was "compelled to terminate [his] employment" and listed three reasons. Id. Thompson gave notice that he was registering with Raymond Jones to run "Thompson & Co. Wealth Management" in Rapid City. Id.

Pioneer argues that the Employment Agreement was not the only agreement Pioneer and Thompson signed regarding his employment because there were two amendments to his Employment Agreement and a Representative Agreement with Linsco/Private Ledger (LPL). Doc. 35 ¶ 1. Pioneer's counsel attached to her affidavit a June 14, 2026, amendment on Paragraph 6 of the Employment Agreement relating to net commissions and fees, Doc. 38-1, and a second amendment to Paragraph 6 regarding compensation, Doc. 38-2. Neither of these amendments alter the relevant provisions of Sections 2 and 21. Pioneer claims that genuine dispute of facts exist on the following issues:[2] (1) whether the parties understood termination of the "Employment Agreement" and termination of Thompson's "employment" to be synonymous and used them interchangeably in the employment-related contracts; (2) whether Thompson's Second Amended Employment Agreement, as well as his contract with LPL and language in his own Notice of Resignation demonstrate that Thompson is subject to the non-compete and non-solicitation clauses; (3) whether Thompson was constructively discharged; and (4) whether Thompson reviewed and understood the Employment Agreement that he signed, as well as the credibility of

[2] Pioneer also believes that genuine issues of material fact exist on the following issues as they relate to Thompson's ERISA claims plead in Count 1: (1) the extent of Thompson's knowledge and prior possession of Pioneer's profit sharing plan allegedly creating subject matter jurisdiction; (2) whether Thompson exhausted his administrative remedies; (3) whether Pioneer interfered with Thompson's ERISA-governed rights under his profit sharing plan; (4) what benefits, rights, and clarifications Thompson is seeking under ERISA; and (5) whether Thompson has standing to bring an ERISA claim after having withdrawn and re-invested his plan benefits. Id. These potential factual issues do not bear on the contract interpretation issues in Thompson's motion for partial summary judgment, Doc. 21, and therefore, the existence of a genuine dispute of material fact on any of these five ERISA-related issues, which this Court is not deciding at this time, is irrelevant to the analysis at hand.

his testimony that he did not understand the contract.[3] Id. at 2. This Court will address the issues concerning Count 2 raised by Pioneer below.

### B. Summary Judgment Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On summary judgment, the evidence is "viewed in the light most favorable to the nonmoving party." True v. Nebraska, 612 F.3d 676, 679 (8th Cir. 2010) (citation omitted). There is a genuine issue of material fact if a "reasonable jury [could] return a verdict for either party" on a particular issue. Mayer v. Countrywide Home Loans, 647 F.3d 789, 791 (8th Cir. 2011). A party opposing a properly made and supported motion for summary judgment must cite particular materials in the record supporting the assertion that a fact is genuinely disputed. Fed. R. Civ. P. 56(c)(1); Gacek v. Owens & Minor Distrib., Inc., 666 F.3d 1142, 1145 (8th Cir. 2012). "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." Thomas v. Corwin, 483 F.3d 516, 527 (8th Cir. 2007).

### C. Analysis

#### 1. South Dakota Law

SDCL § 53-9-8 provides that "[a]ny contract restraining exercise of a lawful profession, trade, or business is void to that extent, except as provided by §§ 53-9-9 to 53-9-12, inclusive." In

[3] During Thompson's deposition, when asked, "And I assume you understood the agreement when you signed it?", Thompson replied, "That would -- no. I mean, I – I wanted to go to work. I knew that I didn't have any sort of negotiating abilities. It was this or nothing. And I was happy to have the job, and I went to work." Doc. 23 ¶ 7 (citing Doc. 24-1 at 2); Doc. 35 ¶ 7.

applying SDCL § 53-9-8, the Supreme Court of South Dakota "assess[es] whether a contract is an unlawful restraint on trade using a three-part test." Aqreva, LLC v. Eide Bailly, LLP, 950 N.W.2d 774, 784 (S.D. 2020). The court first looks to "whether the conduct of the parties concerns a lawful profession, trade or business." Id. (cleaned up and citation omitted). "If this prerequisite is met, [the court] review[s] whether there has been a material restraint upon exercising that lawful profession, trade or business." Id. (cleaned up and citation omitted). "Finally, [the court] assess[es] whether any of the statutory exceptions [in SDCL §§ 53-9-9 to 53-9-12] apply." Id. (citation omitted).

The United States Court of Appeals for the Eighth Circuit has issued three recent decisions discussing South Dakota law on covenants not to compete and non-solicitation agreements: Miller v. Honkamp Krueger Fin. Servs., Inc., 9 F.4th 1011 (8th Cir. 2021); Wilbur-Ellis Co. v. Erikson, 103 F.4th 1352 (8th Cir. 2024)); and Wilbur-Ellis Co., LLC v. Jens, 139 F.4th 608 (8th Cir. 2025). In Miller, the Eighth Circuit interpreted a non-compete provision in an employment agreement governed by South Dakota law as not surviving the termination of the employment agreement where the contract treated the term of employment and the term of the employment agreement as "two distinct concepts." 9 F.4th at 1015. In Erickson, the Eighth Circuit applying South Dakota law and the Miller decision reversed the grant of a preliminary injunction enforcing a non-compete provision in an employee agreement after termination of the agreement. 103 F.4th at 1356–57. The Eighth Circuit in Erickson interpreted the agreement to lack express language stating that the non-compete survived termination of the agreement and thereby concluded that the plaintiff was unlikely to prevail on the merits of its breach of contract claim relating to the non-compete provision. Id.

In Jens, the Eighth Circuit affirmed the district court's denial of a preliminary injunction after it concluded the restrictive covenants in an employment agreement were no longer enforceable under South Dakota law. 139 F.4th at 610. The Jens decision relied on Miller and Erickson to emphasize that "[k]ey to our analysis is the difference between the term of employment and the term of the employment agreement." Id. at 612 (citing Miller, 9 F.4th at 1014–15; Erickson, 103 F.4th at 1356–57). Under the Eighth Circuit's interpretation of South Dakota law, "[w]hen an employment agreement terminates, a covenant not to compete within the employment agreement generally becomes inoperable and unenforceable unless there is additional language in the contract to suggest the parties intend for the noncompete provision to survive past the term of employment." Jens, 139 F.4th at 610. (citing Miller, 9 F.4th at 1015). Therefore, "[e]ven where [b]y its terms, the non-compete provision survived the termination of [the employee's] 'employment,' the provision must still separately survive the termination of the employment agreement." Id. (cleaned up and citation omitted). Because the employment agreement at issue did "not contain a survival clause or any language to suggest the parties intended for the Restrictive Covenants to survive past the termination of the [Employment] Agreement," those covenants were rendered inoperable after the agreement at issue expired. Id. at 611, 613.[4]

**2. Declaratory Judgment Sought on Count 2.**

**a. Valid Termination**

Thompson first seeks a declaration that his termination of the Agreement was valid. Section 2 of the Employment Agreement provides, "This Agreement may be terminated with or

---

[4] Judge Loken concurred separately and "conclude[d] the issue of contract ambiguity under South Dakota law is open for further development and analysis when the district court addresses the merits," as "a fuller record and more focused inquiry[] might persuade the district court to open merits review to extrinsic evidence" to clarify the seeming ambiguous phrase, "employment term." Jens, 139 F.4th at 613–14 (Loken, J., concurring).

without cause at any time by either Party upon written notice of termination to the other, notwithstanding any other Financial Institution employment policy." Doc. 1-1 at 2; Doc. 25 ¶ 2; Doc. 35 ¶ 2. Thompson's Notice of Resignation provided written notice that he was terminating his employment and the Employment Agreement on August 19, 2024. Doc. 1-3 at 1; Doc. 25 ¶ 5; Doc. 35 ¶ 5.

Under South Dakota law, contract interpretation is a question of law for the court. Pauley v. Simonson, 720 N.W.2d 665, 667 (S. D. 2006) (citing Ziegler Furniture and Funeral Home, Inc. v. Cicmanec, 709 N.W.2d 350, 354 (S. D. 2006). This Court needs only interpret Section 2 of the Employment Agreement to decide whether Thompson's termination of the Employment Agreement was valid; whether he was constructively discharged or voluntarily quit does not affect whether termination was valid. Therefore, under the terms of Section 2 of the Employment Agreement, Thompson validly terminated the Employment Agreement on August 19, 2024.

**b. Termination of the Non-Compete Clause**

Thompson next seeks a declaration that the non-compete provision in his Employment Agreement—like the provisions at issue in Miller, Erickson, and Jens—does not survive termination of the Employment Agreement. In deciding the issue, this Court must interpret the Employment Agreement, just as the Eighth Circuit did in Miller, Erickson, and Jens. Whether the termination of the Employment Agreement terminated the non-compete clause is also a matter of contract interpretation. See Miller, 9 F.4th 1011 at 1015 (interpreting a noncompete as failing to survive the termination of the Employment Agreement, because by the contract's own terms, the term of the employment was distinguishable from the term of the Employment Agreement). Section 21 of the Employment Agreement, which contains the non-compete clause, states that the non-compete clause and other restrictions survive the termination of Thompson's *employment*, but

the Agreement is silent as to whether the non-compete clause and other restrictions in Section 21 survive the termination of *the Agreement*. See Doc. 1-1 at 7. The parties included survivorship language in Section 3.p., which imposes a non-solicitation covenant: the non-solicitation clause is described as "the essence of this Agreement" and the paragraph provides that the covenants in Section 3.p. "shall survive this Agreement and apply whether either party terminates this Agreement with or without cause." Doc. 1-1 at 3. No similar language appears to extend the non-compete clause beyond termination of the Employment Agreement.

The non-compete language of the contract between Thompson and Pioneer tracks closely with the non-compete provision at issue in Jens. As observed by the Eighth Circuit, "[e]ven where '[b]y its terms, the non-compete provision survived the termination of [the employee's] 'employment,'' the provision must still separately survive the termination of the employment agreement." Jens, 139 F.4th at 612 (cleaned up and citation omitted). Because the agreement at issue does "not contain a survival clause or any language to suggest the parties intended for the Restrictive Covenants to survive past the termination of the [Employment] Agreement," those covenants in Section 21 were rendered inoperable when Thompson terminated the Agreement. See id. at 611, 613. The presence of survivorship language in other parts of the contract, such as the non-solicitation clause, also supports this conclusion.

**c. Enforceability of the Non-Solicitation Clause**

Thompson last seeks a declaration that the non-solicitation provision in the Employment Agreement is unenforceable because it fails to specifically describe a geographical scope and exceeds the scope of what's permissible under SDCL § 53-9-11, and because it contains a limitation preventing Thompson from aiding in transferring accounts, which impermissibly restricts him from aiding Pioneer clients who contact him without being solicited from transferring

their accounts. Whether the non-solicitation clause violates South Dakota's law prohibiting restraint of trade is also a question of contract interpretation. See Ward v. Midcom, Inc., 575 N.W.2d 233, 236 (S.D. 1998). South Dakota law, however, does not support declaring the non-solicitation agreement entirely unenforceable.

SDCL § 53-9-11 permits non-solicitation provisions so long as they are limited to a "specified area for any period not exceeding two years from the date of termination of the agreement." "While SDCL 53-9-12(2) permits a captive agent to agree not to, e.g., ask or urge a[] [] company's existing customers to purchase new policies from the agent, that statute contains no provision for permitting an agent who continues to sell [a policy] to agree not to sell policies to existing customers who—unsolicited—request such policies." Farm Bureau Life Ins. Co. v. Dolly, 910 N.W.2d 196, 200 (S.D. 2018); see also Miller, 9 F.4th at 1017 ("The South Dakota legislature has created a general prohibition on contracts that restrain trade, with limited, specified exceptions. While non-solicitation agreements are one such exception, the exception does not extend to agreements not to accept unsolicited business.").

Discussing the enforceability of a non-solicitation clause under South Dakota law, Judge Lawrence L. Piersol reflected that "[n]on-solicitation clauses are not a general restraint on trade because 'under SDCL § 53-9-8, an agreement not to disclose information or solicit, unlike a covenant not to compete, is free from challenge as a general restraint on trade.'" gpac, LLP v. Andersen, No. 4:21-CV-4201, 2022 WL 1469388, at *10 (D.S.D. May 10, 2022) (quoting 1st Am. Sys., Inc. v. Rezatto, 311 N.W.2d 51, 57 (S.D. 1981)). "Because a non-disclosure clause," which is akin to a non-solicitation clause, "unlike a non-compete clause, is not a general restraint on trade in South Dakota, it is not held to the same strict standard as a non-compete clause if the language is too broad." Billion v. Oxford, 2016 WL 3976636, at *4 (D.S.D. July 22, 2016).

Under South Dakota law, "agreements which are unreasonable as to the period of restriction or the area encompassed may be partially enforced." Walling Chem. Co. v. Bigner, 349 N.W.2d 647, 650 (S.D. 1984). The Walling "court applied a three-prong reasonableness test to determine the enforceability of the nondisclosure clause: '[A] covenant is reasonable only if it (1) is no greater than required for the protection of the employer, (2) does not impose undue hardship on the employee and (3) is not injurious to the public.'" gpac, LLP, 2022 WL 1469388, at *10 (quoting Walling Chem. Co., 349 N.W.2d at 650). Relying in part on Walling Chemical Company v. Bigner—where the Supreme Court of South Dakota held "the geographical area for the nondisclosure agreement," defined as "the same area within which the former employee had been authorized to represent the former employer" yet lacking a specific territorial limitation, was a reasonable restriction—Judge Piersol determined that a 200-mile geographic limitation was a reasonable restriction to impose for the challenged non-solicitation clause, which did not contain a geographic restriction and appeared to apply throughout the United States. gpac, LLP, 2022 WL 1469388, at *10–11 (citing Walling Chem. Co., 349 N.W.2d at 650); see also id. at *11 ("Although limited facts are available at this stage in the litigation, it appears that a 200 mile limitation from the home office in Sioux Falls, South Dakota is a reasonable limitation in which to restrict Andersen's solicitation of business.").

Section 3.p. of the Employment Agreement contains the non-solicitation agreement and makes clear it is the essence of the agreement and survives termination of the Employment Agreement. Section 3.p. refers to "the area described in Paragraph 21," which is "a radius of one hundred (100) miles from any branch office or facility of Financial Institution." This geographic area can be properly understood as preventing solicitation of customers within 100 miles of Rapid City where Pioneer employed Thompson. Section 3.p. also has a temporal limitation of two years

post-employment during which Thompson cannot solicit Pioneer customers to terminate or reduce their business with Pioneer. Under Dolly, however, Thompson is not prohibited from working with Pioneer customers if they approached Thompson unsolicited. 910 N.W.2d at 200.

This Court cannot, as Thompson requests, declare the non-solicitation clause unenforceable on this record. From Thompson's testimony it appears that he had clients in approximately thirty-seven states, his practice was nationwide, and "it was just a different objective than maintaining a local presence." Doc. 23 ¶ 6 (citing Doc. 24-1 at 3); Doc. 35 ¶ 6. What Thompson did, if anything, to solicit clients of Pioneer during his first two years within 100 miles of Rapid City is unknown to this Court and may be the subject of a later jury trial.

## V. Conclusion

For the foregoing reasons, it is hereby

ORDERED that Defendant Pioneer Bank & Trust's motion to dismiss, Doc. 29, is denied. It is further

ORDERED that Defendant Pioneer Bank & Trust's motion for discovery under Rule 56(d), Doc. 26, is denied. It is finally

ORDERED that Plaintiff Andrew Taylor Thompson's motion for partial summary judgment, Doc. 21, is granted in part and denied in part to the extent stated above.

DATED this 24th day of August, 2026.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE